UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

WINOOSKI HOTEL GROUP, LLC,    )
                             )
          Plaintiff,          )
                             )
          v.                  )    Case No. 2:25-cv-890
                             )
CITY OF WINOOSKI,             )
                             )
          Defendant.          )

**OPINION AND ORDER**

Plaintiff Winooski Hotel Group, LLC ("WHG") brings this action claiming, among other things, an unlawful taking. Pending before the Court is Defendant City of Winooski's ("the City") motion to dismiss the Complaint. The City contends that WHG's first takings claim is precluded by a municipal condemnation ruling that WHG did not appeal. The City further argues that if the Court finds that claim precluded, it should abstain from hearing WHG's remaining causes of action because WHG has asserted substantially the same claims in pending state court litigation.

WHG opposes the motion to dismiss, arguing that the City's preclusion argument is undermined by the United States Supreme Court's holding in *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180 (2019), and that dismissal of the case is therefore unwarranted. For reasons set forth below, the motion to dismiss is denied.

## Factual Background

For purposes of the pending motion, the facts alleged in the Complaint are accepted as true. In 2002, the City created a plan for the redevelopment of its downtown area ("Master Plan"). In 2006, Pizzigalli Property, LLC ("Pizzigalli") entered into an agreement with the City ("Development Agreement") for the development of a hotel at 4 Winooski Falls Way (Lot 9) and a portion a separate co-owned parcel (Lot 2). The Development Agreement provided that Pizzigalli would submit a design that was consistent with the Master Plan and the City's original Act 250 permitting. In exchange, the City would co-sign Pizzigalli's Act 250 permit application.

In 2014, Adam Dubroff, with his entity Alpha Inn Management ("Alpha"), created WHG and acquired Lot 9 and Pizzigalli's hotel development rights. In 2018, the City allegedly determined that Lot 9 would be better used as part of a public infrastructure project involving the redesign and rebuild of the bridge that crosses over the Winooski River ("Bridge Project"). The Complaint alleges that after that decision was made, the City used its regulatory powers to impede the hotel project. In 2022, WHG sued the City in state court to enforce the Development Agreement. That litigation is pending.

In 2023, WHG and Dubroff were formally informed that the Bridge Project required Lot 9, and that Lot 9 would therefore be

2

condemned either temporarily or permanently. In July 2025, after a multi-session hearing in which WHG was permitted to present evidence and arguments, the City condemned Lot 9 and extinguished WHG's rights to the property through at least July 1, 2030. For compensation, the City paid WHG $188,400. WHG did not appeal the City's decision in state Superior Court as allowed under Vermont law. *See* 24 V.S.A. § 2810(a) (authorizing a state court petition by "a person having an interest in [condemned] land" who is "dissatisfied with the action of the" municipality).

WHG filed suit in this Court on November 20, 2025, asserting four causes of action. Count I of the Complaint claims the direct condemnation by the City constituted a physical taking without just compensation. Count II alleges inverse condemnation by means of adverse regulatory enforcement. Both Counts I and II are brought pursuant to 42 U.S.C. § 1983. Count III alleges breach of contract. Count IV alleges breach of the implied covenant of good faith and fair dealing. For relief, WHG seeks $1.3 million as just compensation for the direct condemnation alleged in Count I, and $1.5 million as just compensation for the inverse condemnation alleged in Count II. WHG also seeks incidental and consequential damages for the breaches alleged in Counts III and IV.

Now before the Court is the City's motion to dismiss the Complaint. The City argues that Count I is precluded because WHG never appealed the City's condemnation decision in state court, and that the decision thus serves as a final adjudication for purposes of *res judicata* and collateral estoppel. The City also submits that Counts II, III, and IV of the Complaint are substantially identical to the claims asserted in the pending state court litigation, with the only substantive difference being the invocation of 42 U.S.C. § 1983 in the inverse condemnation claim (Count II). Given those similarities, the City argues that if the Court finds Count I is precluded, it should abstain from hearing the remaining claims.

WHG opposes the motion to dismiss, focusing primarily on the City's preclusion argument. WHG submits that the City's position is contrary to the United States Supreme Court's opinion in *Knick v. Township of Scott, Pennsylvania*, which held that a party need not exhaust state court remedies before filing a takings claim in federal court under 42 U.S.C. § 1983. 588 U.S. at 185. The parties dispute whether that holding applies to a direct condemnation, with the City arguing that *Knick* is limited to inverse condemnation. The parties also dispute whether the City's condemnation decision, including the amount of compensation to be paid, qualified as an adjudication on the merits for purposes of issue and claim preclusion.

4

## Discussion

### I.    Motion to Dismiss Standards

The standard governing motions to dismiss under Rule 12(b)(6) is well established. A complaint may not survive unless it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018). Although the "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). When a defendant raises preclusion as an affirmative defense, dismissal is appropriate under Rule 12(b)(6) if it "is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

### II.    Takings

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without

just compensation." U.S. Const. amend. V. The Takings Clause is "made applicable to the States through the Fourteenth Amendment." *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017). "While States have substantial authority to regulate land use, the right to compensation is triggered if they 'physically appropriat[e]' property or otherwise interfere with the owner's right to exclude others from it." *Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 274 (2024) (quoting *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149-52 (2021)).

"The law recognizes two species of takings: physical takings and regulatory takings." *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006). A physical taking "occurs when there is either a condemnation or a physical appropriation of property." *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 263 (2d Cir. 2014) (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002)). "[A] regulatory taking – also known as inverse condemnation – occurs when the purpose of government regulation and its economic effect on the property owner render the regulation substantially equivalent to an eminent domain proceeding and, therefore, require the government to pay compensation to the property owner." *Southview Associates, Ltd. v. Bongartz*, 980 F.2d 84, 93 n.3 (2d Cir. 1992) (citing *Yee v. City of Escondido*, 503 U.S. 519, 522-23 (1992)).

6

In this case, WHG alleges that the City's direct condemnation of Lot 9 constituted a physical taking through at least July 1, 2030. Regardless of whether a taking is temporary or permanent, "the Constitution clearly requires compensation." *First English Evangelical Lutheran Church v. Los Angeles Cnty.*, 482 U.S. 304, 318 (1987).

## III. The *Knick* Decision

Prior to the Supreme Court's ruling in *Knick*, a property owner alleging a taking by local government was required to exhaust available state procedures before seeking relief in federal court. 588 U.S. at 191 (discussing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1984)). *Williamson County* held that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the [Takings] Clause until it has used the procedure and been denied just compensation." 473 U.S. at 195. Consequently, a federal takings claim against a local government was not considered "ripe" until the property owner sought "compensation through the procedures the State has provided for doing so." *Id.*

In *Knick*, the Supreme Court noted that "[t]he unanticipated consequences of [*Williamson County*] were not clear until 20 years later" when it decided *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323 (2005). *Id.* at 188. *San*

*Remo* held that a state court's resolution of a claim for just compensation "generally has preclusive effect in any subsequent federal suit." *Id.* at 184 (citing *San Remo* generally). As *Knick* explained, "[t]he takings plaintiff thus finds himself in a Catch-22: He cannot go to federal court without going to state court first [as required by *Williamson County*]; but if he goes to state court and loses, his claim will be barred in federal court [per *San Remo*}. The federal claim dies aborning." *Id.* at 184-85.

*Knick* eliminated the so-called Catch-22 "preclusion trap" by overruling *Williamson County*'s state-litigation requirement. *Id.* at 185, 206. Under *Knick*, the "Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." *Id.* at 190. "If a local government takes private property without paying for it, that government has violated the Fifth Amendment — just as the Takings Clause says — without regard to subsequent state court proceedings." *Id.* at 189. The property owner "may bring his claim in federal court under § 1983 at that time." *Id.* at 185.

## IV.   Whether *Knick* Applies to Direct Condemnation

The City contends that WHG's physical takings claim in Count I is precluded because WHG failed to appeal the condemnation decision in Vermont Superior Court. The City

8

further argues that – given the lack of an appeal – the condemnation decision is a final decision and the doctrines of *res judicata* and collateral estoppel bar any further review. WHG submits that the City's arguments are foreclosed by *Knick*, and that it had a right to proceed directly to federal court without exhausting any state court procedures.

The City seeks to distinguish *Knick*, noting that *Knick* involved indirect condemnation. The *Knick* decision, however, offered broad language with respect to the nature of the taking. The Supreme Court stated that

> [t]he availability of *any* particular compensation remedy, *such as an inverse condemnation claim* under state law, cannot infringe or restrict the property owner's federal constitutional claim . . . . The fact that the State has provided a property owner with a procedure that may subsequently result in just compensation cannot deprive the owner of his Fifth Amendment right to compensation under the Constitution, leaving only the state law right. And that is key because it is the existence of the Fifth Amendment right that allows the owner to proceed directly to federal court under § 1983.

*Knick*, 588 U.S. at 191 (emphasis supplied). The Supreme Court cited inverse condemnation as an example ("such as") of a state law compensation scheme that would have, under *Williamson County* and *San Remo*, impeded a federal claim. *Id.* The Court also ruled that the existence of "any" such scheme does not preclude a federal claim. *Id. Knick* did not expressly confine its holding to inverse condemnation

9

cases. *See FEDEQ DV004, LLC v. City of Portland*, 597 F. Supp. 3d 463, 471 (D. Me. 2022) (addressing direct condemnation and concluding that "where state law makes the property owner the plaintiff in any legal proceedings concerning eminent domain, there is no reason to require the property owner to litigate in state court. Indeed, *Knick* stands for this very proposition."); *Soscia Holdings LLC v. Town of Coventry*, No. 25-CV-274-MRD-AEM, 2026 WL 696902, at *5 (D.R.I. Mar. 12, 2026) ("while *Knick* was decided in the context of an inverse condemnation, nothing in the Supreme Court's opinion limits its holding to only that specific kind of taking action").

For support of its position, the City's initial memorandum cites *Stensrud v. Rochester Genesee Regional Transportation Authority*, in which the plaintiffs obtained a state court judgment awarding them damages after an eminent domain proceeding took their property. No. 23-765, 2024 WL 2104604 (2d Cir. May 10, 2024) (cited at ECF No. 6 at 9). The Second Circuit acknowledged the holding in *Knick*, but concluded that "when a plaintiff *has* in fact brought his claims in state court and litigated those claims to a judgment, the district court is required by federal law to apply collateral estoppel – and *res judicata* – to issues decided in those proceedings, notwithstanding

10

*Knick*." *Id.* at *2 (cleaned up). *Stensrud* is plainly distinguishable, since in this case WHG did not proceed to state court and thus did not obtain a preclusive state court judgment. Instead, WHG proceeded directly to federal court, as *Knick* allows.

The City's reply memorandum posits that federal courts are "split . . . about the proper scope of *Knick*." ECF No. 17 at 3-4 (citing cases). None of the cases listed by the City apply to the facts presented here. The City first cites *Fore Stars, Ltd. v. City of Las Vegas*, an inverse condemnation case in which property owners brought suit against the defendant city in state court. 488 F. Supp. 3d 982, 984 (D. Nev. 2020). The city, citing *Knick*, tried to remove the case to federal court. The district court first determined that "*Knick*'s holding that new takings plaintiffs may now bring their inverse-condemnation claims directly to federal court does not necessarily mean that pending inverse-condemnation suits became removable." *Id.* at 988. Absent specific guidance from Supreme Court regarding removal, the district court ultimately determined that *Knick* was not an "order" or "other paper" that would render the city's removal timely under 28 U.S.C. § 1446(b)(3). *Id.* at 993. That holding has no bearing on this case.

11

The City next cites *City of Jamaica Beach v. Williams*, in which the city brought a state court condemnation action and the defendant/counterclaim plaintiff sought removal to federal court. No. 3:20-CV-00241, 2020 WL 6120469, at *1 (S.D. Tex. Sept. 29, 2020), *report and recommendation adopted*, No. 3:20-CV-00241, 2020 WL 6060705 (S.D. Tex. Oct. 14, 2020). The court held that, under the well-pleaded complaint rule, a counterclaim cannot form the basis for federal jurisdiction. *Id.* at *1-*2 (citing *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002)). Given that the city's complaint brought only state law claims, removal was barred. *Id.*

The property owner in *City of Jamaica Beach* claimed that *Knick* modified the well-pleaded complaint rule and permitted removal in takings cases. The court disagreed, concluding that *Knick* does not apply to defendants in state court takings proceedings: "[n]o language in *Knick* even remotely suggests that the Supreme Court intended to carve out an exception for takings claims and permit state eminent domain defendants to remove a condemnation case to federal court simply by asserting a constitutional claim." *Id.* at *3. As with *Fore Stars*, *City of Jamaica Beach* has no application here, since in this case there was no state court proceeding and removal was not at issue.

12

The City's final case citation, *Providence City v. Thompson*, also involved a property owner's effort to remove a case brought by the government in state court. No. 1:19-CV-88, 2019 WL 4932759, at *1 (D. Utah Oct. 7, 2019). Like the court in *City of Jamaica Beach*, the *Providence City* court found that removal was barred by the well-pleaded complaint rule. *Id.* at *4. The court also found that "[u]nlike *Knick*, there is no takings plaintiff in this action." *Id.* Once again, the case is distinguishable, as WHG is a takings plaintiff challenging the City's action, for the first time, in federal court.

*Providence City* noted that *Knick* allowed into federal court "takings claims that otherwise would have been brought as inverse condemnation suits in state court." *Id.* at *3 (quoting *Knick*, 588 U.S. at 205).[1] The court concluded, based upon that wording, that "*Knick* does not open federal courts to direct condemnation actions initiated by governments." *Id.* Insofar as *Providence City*

---

1 As the court observed in *Soscia Holdings*, "[t]hat comment [in *Knick*] was in response to concerns raised by the dissenting Justices that overruling *Williamson County* could expose government officials to new liability." 2026 WL 696902, at *5. *Soscia Holdings* concluded that, after *Knick*, "[w]hether pursued in state court or this Court, the Town is exposed to no new liability because it is constitutionally obligated to provide just compensation for the taking under both state and federal law." *Id.*

13

was referring to direct condemnation actions initiated by governments *in state court*, its conclusion may be correct where the state court defendant subsequently pursues removal. *See* 28 U.S.C. § 1441(a) (requiring original federal jurisdiction as a basis for removal). If, however, *Providence City* intended its statement to apply to all direct condemnation actions, including municipal eminent domain determinations that do not involve state courts, the Court cannot agree.

*Knick* held generally that property owners have a Fifth Amendment right to challenge a taking in federal court. *Knick* summarized its reasoning as follows:

> In sum, because a taking without compensation violates the self-executing Fifth Amendment at the time of the taking, the property owner can bring a federal suit at that time. Just as someone whose property has been taken by the Federal Government . . . , someone whose property has been taken by a local government has a claim under § 1983 for a deprivation of a right secured by the Constitution that he may bring upon the taking in federal court. The general rule is that plaintiffs may bring constitutional claims under § 1983 without first bringing any sort of state lawsuit, even when state court actions addressing the underlying behavior are available ... This is as true for takings claims as for any other claim grounded in the bill of rights.

588 U.S. at 194 (cleaned up). *Knick* therefore presents property owners with a choice: bring a challenge in state court to the extent authorized by state law, or proceed in federal court under Section 1983. The Court's summary did not differentiate

14

between direct and indirect condemnation, explaining only that the claim is ripe "at the time of the taking." *Id.* at 194.

Here, the City initiated a municipal hearing process to effectuate its taking and determined the amount of compensation to be paid. WHG chose to challenge the City's condemnation decision in federal court. *Knick* supports that choice.

## V.    Preclusion

The City argues that Count I is precluded by the condemnation decision. Specifically, the City submits that for purposes of applying *res judicata* and collateral estoppel, the condemnation proceeding was quasi-judicial, the issue of just compensation was fully litigated, and WHG failed to avail itself of the statutory right to appeal to the Vermont Superior Court. The City contends that WHG's failure to appeal rendered the condemnation decision final, and that its takings claim is therefore precluded from further review. WHG disputes whether the condemnation proceeding qualified as preclusive.

The Court finds that it need not consider either *res judicata* or collateral estoppel, since the City's condemnation decision cannot be considered preclusive. The City argues that its decision became a final adjudication on the merits for purposes of preclusion when WHG failed to appeal in state court. Yet *Knick* made clear that a property owner is not required to pursue state court remedies. Indeed, compelling a would-be

15

federal plaintiff to first pursue an appeal in Vermont Superior Court – or otherwise suffer the penalty of preclusion – would resurrect the portion of *Williamson County* that *Knick* overruled. 588 U.S. at 185 (discussing the "preclusion trap" created by *Williamson County* and *San Remo*).

Furthermore, it was the condemnation proceeding itself that triggered WHG's right to bring a claim under the Fifth Amendment. *Knick* did not disturb the *Williamson County* requirement that a takings claim requires a final governmental decision. *Id.* at 187-88. Prior to the City's condemnation proceeding, which included deliberation on the question of just compensation, there was no taking. Once the City issued its decision, WHG's claim became ripe and, under *Knick*, it was entitled to challenge the City's action in either state or federal court. To hold that WHG is now precluded from pursuing its Fifth Amendment claim would mean, as *Knick* succinctly observed, "the federal claim dies aborning." *Id.* at 184-85. The Court therefore finds that preclusion does not apply, and the motion to dismiss Count I is denied.

## VI.  Abstention

The City's initial memorandum states that "if the Court dismisses Count I, the Court should exercise its judicial discretion to dismiss plaintiff's remaining claims which are currently pending in the Vermont Superior Court." ECF No. 6 at

16

9. Because the Court has declined to dismiss Count I, it similarly declines to dismiss the remaining Counts on the grounds submitted by the City.

## Conclusion

For the reasons set forth above, the City's motion to dismiss (ECF No. 6) is denied.

DATED at Burlington, in the District of Vermont, this 7th day of July 2026.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge

17